# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

BROCK BEAUTY INCORPORATED,
840 Oak Harbor Boulevard
Slidell, Louisiana 22310

                    Plaintiff,

v.

ALEXANDRA ARNOLD
12475 Settles Court
Fort Washington, Maryland 20744
Prince George's County

                      Defendant.

Civil No. ___8:14-cv-03749_____

## **COMPLAINT**

Plaintiff, Brock Beauty Incorporated ("Plaintiff" or "Brock Beauty"), by and through its undersigned counsel, brings this action for defamation, product/commercial disparagement, and tortious interference with business relations against Defendant Alexandra Arnold ("Defendant" or "Arnold").

Plaintiff Brock Beauty hereby seeks (1) an order requiring Defendant to permanently remove the defamatory and disparaging statements described herein; (2) preliminary and permanent injunctive relief against Defendant publishing further defamatory and disparaging statements about Plaintiff's products or Plaintiff; (3) general damages and special damages arising from Defendant's defamatory and disparaging acts; and (4) other relief as the Court may deem appropriate.

Brock Beauty states as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

## THE PARTIES

1. Plaintiff Brock Beauty Incorporated is a Louisiana corporation, located at 840 Oak Harbor Boulevard, Slidell, Louisiana 70458.

2. On information and belief, Defendant Alexandra Arnold is an individual residing at 12475 Settles Court, Fort Washington, Prince George's County, Maryland 20744.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. §1332 over the defamation, commercial disparagement, and tortious interference with business relations claims under common law, because the matter in controversy exceeds $75,000 and is between citizens of different states.

4. Venue is proper under 28 U.S.C. § 1391 (b)-(c).

## BROCK BEAUTY AND ITS HAIRFINITY® HAIR VITAMINS

5. Brock Beauty, through its founders Brock and Tymeka Lawrence, began developing natural hair products in 2004 that target the health-conscious consumer.

6. In 2007, the founders launched HAIRFINITY® hair vitamins, a natural supplement formulated with hair-specific nutrients that are clinically-proven to promote natural hair growth, thickness, and strength. In 2010, the founders formed Brock Beauty, Inc. and began selling the vitamins under the corporation. The ingredients in the HAIRFINITY® hair vitamins include, but are not limited to, Biotin, Niacin, Vitamin A, Vitamin C, Vitamin, D, Vitamin B12, Vitamin B Complex, Silica, and Methylsulfonylmethane ("MSM"), all of which work together to promote hair health and hair growth.

7. Dr. Jay Udani, MD, of Medicus Research, LLC and Medical Director of Northridge Hospital Integrative Medicine Program, conducted a clinical study that resulted in a September 26, 2013

2

final report that evaluated the effect of the HAIRFINITY® hair vitamins on promoting faster hair growth and promoting thicker hair.  The report found that use of the HAIRFINITY® hair vitamins "was demonstrated to be effective in significantly increasing the average hair growth" and in improving hair thickness in subjects who consumed the HAIRFINITY® hair vitamins during a 30 day period.

8. Since its launch in 2007, the HAIRFINITY® hair vitamins have been quite successful. Sales of the HAIRFINITY® hair vitamins grew steadily from 2007 – 2013, with a multimillion-dollar annual sales volume.

9. As a result of the success of Brock Beauty's HAIRFINITY® hair vitamins and its other natural hair care products, Brock Beauty has garnered considerable consumer recognition and goodwill in the natural hair care product industry, boasting worldwide product distribution, celebrity clientele, and a lot of media attention of the HAIRFINITY® hair vitamins through articles in some of the most popular hair and beauty magazines and websites, including Essence.com (a leading website for African American hair care) and in *Woman's World* (the highest selling magazine for single-copies in the U.S.

**DEFENDANT AND HER DEFAMATORY AND DISPARAGING STATEMENTS REGARDING THE HAIRFINITY® HAIR VITAMINS**

10. Defendant is a popular social media personality with approximately 13,000 YouTube followers (i.e., fans who subscribe to her social media postings) and an additional 2,000 followers on Instagram and Pinterest, and she operates online under the username "LetsCLexie." Defendant frequently posts on some of the most popular social media sites, including YouTube (http://www.youtube.com/user/LetsCLexie#), Facebook (https://www.facebook.com/LetsCLexie), Tumblr (https://www.tumblr.com/search/letsclexie), Instagram (http://instagram.com/letsclexie), and

Pinterest (http://www.pinterest.com/alexearnold/). Defendant also maintains her own website located at www.LetsCLexie.com.

11. Defendant regularly opines on a variety of topics, including natural hair maintenance, beauty, fashion, and inspiration.

12. Defendant has a strong YouTube presence and has posted 32 videos on her popular YouTube Channel during the last two years.

13. Defendant posts up to three videos per month on her YouTube Channel and regularly responds to comments that YouTube users post regarding Defendant's videos.

14. Defendant's YouTube videos regularly each receive between 1,100 and 23,000 views.

15. Defendant's infectious and relatable personality, in addition to her numerous hair and beauty tutorials, has driven her YouTube popularity, and her YouTube followers, like this sampling below, let her know how much she is liked:


Zatara Berry
5 months ago

That was a really great video! not long and drawn-out, very informative, nice clean editing! And just in time for me to put in a weave in a few days, thanks!


LetsCLexie
5 months ago

Hey, thanks!! Aren't you glad when things come right on time?! Happy it helped;)

Case 8:14-cv-03749-DKC Document 1 Filed 12/01/14 Page 5 of 14

16. Defendant incorporates sophisticated production values in each of her YouTube videos, including but not limited to graphics and sound effects, all of which drive up the appeal of her video posts.

17. Defendant's YouTube subscribers regularly request that Defendant post video tutorials outlining her hair care regimen.

18. Defendant has posted 18 instructional hair maintenance videos to her 13,000+ YouTube subscribers as of the filing date of this lawsuit. Defendant's instructional hair maintenance videos are each based on her extensive personal experience and passion regarding hair maintenance.

### A. DEFENDANT'S OWN USE OF THE HAIRFINITY® HAIR VITAMINS

19. As recounted by Defendant in two videos that she uploaded on YouTube (identified *infra* as the "Initial Video" and the "Offending Video"), Defendant first began use of Plaintiff's HAIRFINITY® hair vitamins on or about January 2013. After one month of use, Defendant experienced significant improvements in hair quality and noted that the HAIRFINITY® hair vitamins are "really really great" and that her hair has grown "really well" after her one month of use (http://www.youtube.com/watch?v=d1g8ZCK8XVI&index=23&list=UUYGftebVvpQSGiEeI6sexQw).

20. On or about May 2013, Defendant cut her hair and temporarily discontinued use of the HAIRFINITY® hair vitamins.

21. On or about September 2013, Defendant once again began use of the HAIRFINITY® hair vitamins, and she continued to use the HAIRFINITY® hair vitamins through January 2014.

22. Between September 2013 and January 2014, when Defendant resumed use of Plaintiff's HAIRFINITY® hair vitamins, Defendant regularly uploaded pictures of herself on a separate social

5

media website, Instagram, wearing her hair in a wide range of manipulated styles, including weaves, hair extensions, and braids. On January 15, 2014, Defendant uploaded a picture onto the same website displaying her hair with dyed tips.



B. **DEFENDANT'S PUBLICATION OF DEFAMATORY AND DISPARAGING STATEMENTS**

23.  On February 28, 2013, Defendant posted a video to YouTube entitled, "Hairfinity Review & Giveaway," located at http://www.youtube.com/watch?v=d1g8ZCK8XVI&index=23&list=UUYGftebVvpQSGiEeI6sexQw, (the "Initial Video"), in which she recounts her positive experience with Plaintiff's HAIRFINITY® hair vitamins.

24.  Approximately one year later, on March 28, 2014, Defendant posted to YouTube a video titled "Why I Stopped Taking Hairfinity (With Pictures)," located at

http://www.youtube.com/watch?v=FzwvbPpujb4&list=UUYGftebVvpQSGiEeI6sexQw (the "Offending Video"). In the Offending Video, Defendant updates her followers on her experience with Plaintiff's HAIRFINITY® hair vitamins, and she states that the HAIRFINITY® hair vitamins caused her hair to thin at the tips: "As you can see in the picture, [my hair is] thicker around the roots but its thinner around the top. So I don't know what that's a result of, if it's a result of shedding or maybe my hair was growing quickly but it was just growing weaker and weaker and you could tell that as it got longer. I don't know what caused it… well I do believe that Hairfinity caused it definitely but I don't know how it manifested itself into giving me thinner hair" and "I haven't taken Hairfinity since that hideous picture at the end of January [2014]!"

25.     Defendant displayed the following pictures on the Offending Video illustrating her hair before and after she commenced use of the HAIRFINITY® hair vitamins:



26.     Defendant's "September 2013" picture, taken prior to her use of the HAIRFINITY® hair vitamins, displays her hair in its natural, un-manipulated form. In the "January 2014" picture, taken immediately after Defendant discontinued her use of the HAIRFINITY® hair vitamins, Defendant

straightened or manipulated her hair which gives a different visual effect than her hair photo in September 2013.

27. Defendant's display of the "September 2013" and "January 2014" pictures, especially side-by-side, creates a false impression that Plaintiff's HAIRFINITY® hair vitamins caused Defendant's hair to thin.

28. Soon after Defendant posted the Offending Video featuring the Plaintiff's Product name "Hairfinity" in the title, on YouTube, the Offending Video became an instant success, since it has received more than 646,076 views, 1,243 YouTube user comments, and nearly 5,105 "Likes" on YouTube as of the date of the filing of this lawsuit. The Offending Video has received a significantly larger audience as compared to Defendant's other videos, which generally receive under 23,000 views. In much of the user commentary, a number of YouTube users cited Defendant's Offending Video as the sole reason for their decision not to purchase Plaintiff's HAIRFINITY® hair vitamins:


**Alexis Ellie**
2 months ago
I was thinking about taking this, and my hair is extremely thick.  Your pictures have totally stopped me from trying it.  I don't get weaves and my hair is completely natural.  I'd like long hair, but I'd much prefer it to be thick.  I'll live with it now, it goes a little past my shoulders.


**babyuv3**
5 months ago
Great info and thanks for being honest. I was undecided on whether or not to try these pills but your video has helped me to decide not to. I think a good prenatal vitamin will work better for me along with monitoring and healthy hair techniques. Thanks again 😊


Kiandra McGhee  1 week ago
I was considering taking hairfinity, but I'm glad you did this video. I was wondering if it thins hair, so I will just continue my hair journey naturally.
Reply


Vinyette Carter
2 months ago

Very good information. I was researching the vitamins myself before I decided to purchase it but I wasn't sure if it would hurt my hair rather than help it.
**Reply**


Ashley Johnson
5 months ago

This just sealed the deal for me. For two months I have been going back and forth on whether or not to try these but now I don't think I will. Plus my husband thinks my hair is growing just fine so thank you so much for this video!!

29. Plaintiff's analysis of the YouTube user comments revealed that approximately thirty percent (30%) of the comments stated that they would not purchase the HAIRFINITY® hair vitamins after viewing the Offending Video.

30. Defendant has profited from the Offending video since she posted it on March 28, 2014, because she has allowed advertisements to appear in connection with the video, and Defendant acknowledged this fact in her July 7, 2014 email to Plaintiff's inside counsel.

31. The use of advertising in connection with YouTube videos is within the discretion of the person posting the video, and this option is called "monetization" by YouTube.

32. Immediately following the posting of the Offending Video, monthly sales for the HAIRFINITY® hair vitamins began a downward trajectory for the first time since the product's launch. Between March 2014 when the wrongful conduct occurred and October 2014 (the month with most recent sales unit figures), the percentage drop in units sold of the HAIRFINITY® hair vitamins was nearly forty percent (40%), resulting in millions of dollars in lost revenue. Monthly sales of the HAIRFINITY® hair vitamins continued to drop despite Plaintiff's rapidly expanding business and increased investment in marketing of the HAIRFINITY® hair vitamins across the world during that same time period.

### C. PLAINTIFF'S ATTEMPTS TO RESOLVE THE MATTER

33. Plaintiff has made numerous attempts to resolve this matter prior to resorting to litigation. Between May and September 2014, Plaintiff submitted a total of three takedown requests to YouTube through its inside counsel alleging defamation, disparagement, and trademark infringement of Plaintiff's registered HAIRFINITY® trademark. YouTube ultimately stated that it is not in a position to judge Plaintiff's claims.

34. Between May and July 2014, Plaintiff corresponded with Defendant and requested that Defendant remove the Offending Video. Defendant initially denied her identity as the account holder of the YouTube LetsCLexie username. Later, on July 7, 2014, Defendant retracted her initial denial of her identity, denied all of Plaintiff's claims, and admitted to voluntarily running advertisements before the Offending Video.

## COUNT I
## DEFAMATION

35.     The information and allegations set forth in paragraphs 1 through 34 above are incorporated as though fully set forth herein.

36.     Defendant's declaratory statement that Plaintiff's HAIRFINITY® hair vitamins caused her hair to thin at the tips despite being thick at the roots is impossible, and it fails to account for other likely causes of her hair thinning or damage, including the hair weaves, braids, and color dyeing that Defendant applied throughout the same time frame that Defendant used Plaintiff's HAIRFINITY® hair vitamins.

37.     Defendant's defamatory statement discredited the efficacy of Plaintiff's HAIRFINITY® hair vitamins, which have been clinically proven to increase the length and thickness of hair.

38.     Defendant's defamatory statement directly concerns Plaintiff because Defendant not only identifies Plaintiff's HAIRFINITY® hair vitamins in the title of the Offending Video, "Why I Stopped Taking Hairfinity (With Pictures)," but also directly references Plaintiff's HAIRFINITY® hair vitamins throughout the Offending Video.

39.     Defendant posted the Offending Video on YouTube, a public website that receives up to one billion unique viewers per month, and Defendant's Offending Video has received more than 646,076 views as of the date of the filing of this complaint.

40.     Defendant exhibited a lack of reasonable belief in the truth of her statement that Plaintiff's HAIRFINITY® hair vitamins caused her hair to thin, because a woman who passionately posts videos regarding hair maintenance knows that a number of external factors can affect the quality and appearance of hair, including but not limited to the use of hair weaves, braids, and color dyeing,

Vitamin D deficiency, hormonal imbalance, stress, and hair products that contain Sodium Lauryl Sulfate.

41.     Defendant's actions caused Plaintiff to suffer damages and injury to its reputation.

42.     Plaintiff's sales of the HAIRFINITY® hair vitamins steadily declined since Defendant posted the Offending Video on March 28, 2014 and YouTube user comments reflect consumer's view that they are avoiding using Plaintiff's HAIRFINITY® hair vitamins based on Defendant's Offending Video.

## COUNT II
## PRODUCT/COMMERCIAL DISPARAGEMENT

43. The information and allegations set forth in paragraphs 1 through 42 above are incorporated as though fully set forth herein.

44.     Defendant's declaratory statement that Plaintiff's HAIRFINITY® hair vitamins caused her hair to thin at the tips despite being thick at the roots is impossible, and it fails to account for other likely causes of her hair thinning, including the hair weaves, braids, and color dyeing that Defendant used throughout the same time frame that Defendant used Plaintiff's HAIRFINITY® hair vitamins.

45.     Defendant, who is keenly aware of her influential YouTube presence, reasonably should have known that publishing a video titled, "Why I Stopped Taking Hairfinity (With Pictures)," on YouTube, a website that receives up to one billion unique viewers per month, would draw negative attention to Plaintiff's HAIRFINITY® hair vitamins and result in pecuniary loss to Plaintiff.

46.     Plaintiff suffered pecuniary loss because the sales of the HAIRFINITY® hair vitamins steadily declined since Defendant posted the disparaging Offending Video on March 28, 2014, with a forty percent (40%) drop in sales between March 2014 and October 2014, resulting in millions of dollars

in lost revenue. YouTube user comments reflect consumer's view that they are avoiding using Plaintiff's HAIRFINITY® hair vitamins based on Defendant's Offending Video. Plaintiff's analysis of the YouTube user comments revealed that approximately thirty percent (30%) of the comments stated that they would not purchase the HAIRFINITY® hair vitamins after viewing the Offending Video.

47. Defendant has extensive personal experience regarding hair maintenance and either knew that her assertion that Plaintiff's HAIRFINITY® hair vitamins caused her hair to thin was false or acted in reckless disregard of its truth.

## COUNT III
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

48. The information and allegations set forth in paragraphs 1 through 47 above are incorporated as though fully set forth herein.

49. Defendant intentionally and improperly interfered with Plaintiff's prospective contractual relations with potential HAIRFINITY® hair vitamins purchasers when she posted the disparaging Offending Video to YouTube and thereby induced the potential purchasers to reconsider their decision to buy Plaintiff's HAIRFINITY® hair vitamins, as reflected in a number of YouTube user comments that follow the Offending Video.

50. Defendant's display of the "January 2014" picture with her hair deliberately manipulated after Defendant used the HAIRFINITY® hair vitamins creates a false impression that Plaintiff's HAIRFINITY® hair vitamins caused Defendant's hair to thin.

51. Defendant has extensive personal experience regarding hair maintenance and either knew that her assertion that Plaintiff's HAIRFINITY® hair vitamins caused her hair to thin was false or acted in reckless disregard of its truth.

WHEREFORE, Brock Beauty respectfully requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to the following:

A. An order requiring Defendant to permanently remove the video "Why I Stopped Taking Hairfinity (With Pictures)" and corresponding user comments located at http://www.youtube.com/watch?v=FzwvbPpujb4&list=UUYGftebVvpQSGiEeI6sexQw from any online website or social media site where the video may appear;

B. Preliminary and permanent injunctive relief against Defendant publishing further defamatory and disparaging statements about Plaintiff's HAIRFINITY® hair vitamins or Plaintiff;

C. Any special and general damages arising from Defendant's defamatory and disparaging acts, in an amount to be determined at trial; and

D. Other relief as the Court may deem appropriate.

Dated: _____                     Respectfully submitted,

                                              _____/Lisa A. Dunner/_____

                                              Lisa A. Dunner, Esq. (Bar No. 28695)
                                              Adam W. Sikich, Esq. (Pro Hac Vice Pending)
                                              DUNNER LAW PLLC
                                              3243 P Street, N.W.
                                              Washington, DC 20007
                                              (202) 298-6002 (phone)
                                              (202) 403-3030 (fax)
                                              Email: ldunner@dunnerlaw.com

                                              Attorneys for Plaintiff Brock Beauty, Inc.